Rachel Seaton Brownell (N.J. Bar No. 021842011)
Tomasz Pacholec (N.J. Bar No. 162142015)
**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
*Attorneys for Defendant*
*OnSolve, LLC*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICK GARGANO, | Civil Action No. 2:22-cv-2028 |
| Plaintiff, | |
| vs. | **NOTICE OF REMOVAL** |
| ONSOLVE NOW, formerly SEND WORD NOW, JOHN AND JANE DOES 1-10 and ABC CORPS. 1-10. | **Electronically Filed** |
| Defendants. | |

**TO:    THE CLERK AND THE HONORABLE JUDGES**
        **OF THE UNITED STATES DISTRICT COURT**
        **FOR THE DISTRICT OF NEW JERSEY**

Defendant OnSolve, LLC (improperly pled as "OnSolve Now formerly Send Word Now")

("OnSolve" or "Defendant") hereby files this Notice of Removal of the above-captioned action to

the United States District Court for the District of New Jersey, from the New Jersey Superior

Court, Law Division, Hudson County, where the action is now pending, as provided by Title 28,

United States Code, Chapter 89 and states:

1.      Plaintiff Nick Gargano ("Plaintiff") commenced this action against Defendant, on

March 7, 2022 by filing a Complaint in the Superior Court of New Jersey, Law Division, Hudson

County, captioned "*Nick Gargano v. OnSolve Now, formerly Send Word Now, John and Jane Does*

*1-10 and ABC Corps. 1-10*" bearing Docket No. HUD-L-000790-22 ("the State Court Action").

The State Court Action is now pending in that court. Attached as **Exhibit A** is a copy of the Summons and Plaintiff's Complaint.

2. The Summons and Complaint were served on OnSolve on March 10, 2022. *See* **Exhibit A.**

3. The aforementioned documents constitute all "process, pleadings and orders" served upon Defendants in the State Court Action pursuant to 28 U.S.C. § 1446(a).

**TIMELINESS OF REMOVAL**

4. This Notice of Removal is timely filed within 30 days of March 10, 2022, the date on which service was effectuated, as required by 28 U.S.C. § 1446(b).

5. This Notice of Removal is also filed within one year of the commencement of the State Court Action and therefore is timely under 28 U.S.C. § 1446(c)(l).

**DIVERSITY JURISDICTION**

6. The United States District Court for the District of New Jersey has diversity jurisdiction over this case based on 28 U.S.C. § 1332. Diversity jurisdiction exists when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states. *Id.* at § 1332 (a)(1). As explained below, both of these requirements are met.

A. **Citizens of Different States**

7. At the time of filing of the Complaint and at the time of removal, Plaintiff is an individual and a resident and, upon information and belief, a citizen of New Jersey, in that he lives in South Plainfield, New Jersey. *See* **Exhibit A**, pg. 1.

8.    Defendant OnSolve, LLC is a limited liability company.  For purposes of diversity jurisdiction purposes, OnSolve is a citizen of Delaware and Georgia, as determined by the following facts and law:

(a)    Unlike corporations, a limited liability company's principal place of business is "legally irrelevant," and citizenship is based on the citizenship of each of its members. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("[T]he citizenship of an LLC is determined by the citizenship of its members' . . . .  The state of organization and the principal place of business of an unincorporated association are legally irrelevant."); *Sync Labs LLC v. Fusion Mfg.*, Civ. No. 11-3671, 2017 WL 2577543, at *1 (D.N.J. June 13, 2017) ("a Limited Liability Corporation is considered a citizen of the state of each of its members.").  "A non-corporate business entity is deemed to be a citizen of every state in which an entity-owner is a citizen." *Hessert Construction NJ, LLC v. Garrison Architects, PC*, 2007 WL 2066355, at *2 (D.N.J. July 13, 2007) (internal citations omitted).

(b)    At the time of the filing of the Complaint and this removal, Defendant OnSolve, LLC's sole member is OnSolve Intermediate Holding Company, a C corporation.

(c)    For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of the state in which it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center" – the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Therefore, OnSolve Intermediate Holding Company is a citizen of Delaware, its place of incorporation, as well as Georgia, the location of its headquarters.

(d)    Thus, OnSolve, LLC is not a citizen of New Jersey, but rather is a citizen of Delaware and Georgia for purposes of 28 U.S.C. § 1332. *See, e.g., Lincoln Ben. Life Co., supra,* at 105.

9.    With regard to Defendants "JOHN AND JANE DOES 1-10 and ABC CORPS. 1-10" "[i]t is generally true that "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). The Third Circuit has taken this to mean that "John Doe" defendants do not bar removal for diversity, unless the complaint contains allegations that identify those John Doe defendants to some extent. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29-30 (3d Cir.1985)." Here, there are no allegations that identify "JOHN AND JANE DOES 1-10 and ABC CORPS. 1-10."  Thus, those Doe Defendants should be disregarded for purposes of removal.

10.    Complete diversity exists now and at the time the State Court Action was filed because Plaintiff and Defendant are citizens of different states.

### B. **Amount in Controversy is Met**[1]

11.    The matter in controversy in the State Court Action exceeds the sum or value of $75,000.00. *See* 28 U.S.C. § 1332(a).  Where removal is based on diversity of citizenship and the initial pleading does not demand a specific sum, "the notice of removal may assert the amount in controversy," and the removing defendants need only establish that it is more likely than not that the amount in controversy exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1446(c)(2); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A]s specified in §

---

[1]    Defendant does not concede Plaintiff's allegations are true or that his claims have any merit. Defendant provides the following only to demonstrate that the amount in controversy, based on the demand and relief sought by Plaintiff, taken as a whole, exceeds the $75,000 jurisdictional requirement.  Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship under 28 U.S.C. §§ 1332(a) and 1441(a)

4

1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

12.     The Complaint filed by Plaintiff alleges two separate causes of action for violations of the New Jersey Law Against Discrimination ("LAD") related to the end of his employment and purported failure to be accommodated.  *See* Exhibit A.  Plaintiff does not allege a specific amount of damages in his Complaint.  Although Defendant submits that Plaintiff is not entitled to any recovery, Plaintiff states that his claimed damages are "compensatory damages for loss of wages (back pay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish, punitive damages, attorneys fees, pre- and post-judgment interest and costs of suit."  Exhibit A. Here, the amount in controversy meets the $75,000 threshold, as follows:

(a)     At the time of Plaintiff's termination on November 22, 2021, his annual base salary was $137,025. Assuming Plaintiff seeks back pay though a trial date that is likely to be set for a date at least 24 months from the filing of his Complaint (i.e. March 2024), a reasonable estimate of Plaintiff's alleged economic losses (i.e., back pay, front pay, loss of benefits), should he prevail, exceeds the sum or value $75,000.00. *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993).

(b)     Plaintiff also seeks damages for the alleged emotional harm he suffered, which are recoverable under LAD and add significantly to the amount in controversy.  *See e.g., Maiorino v. Schering–Plough Corp.*, 695 A.2d 353, 361-62, 367 (N.J. Super. App. Div. 1997) (affirming a compensatory damages award that included $55,000 for pain, suffering and humiliation in employment termination case); *Klawitter v. City of Trenton*, 928 A.2d 900, 919-20

(N.J. Super. App. Div. 2007) (affirming emotional distress award of $79,538 in discrimination case).

(c)    Plaintiff further seeks punitive damages. "The Court must consider the plaintiff's demand for punitive damages when calculating the amount in controversy, and can aggregate these damages with the requested compensatory damages." *See Goralski v. Shared Techs., Inc.*, 2009 U.S. Dist. LEXIS 69042, *15-16 (D.N.J. Aug. 7, 2009) (citing *Golden v. Golden*, 382 F.3d 348, 355 (3d. Cir. 2004) (noting that jurisdictional amount in controversy may be satisfied on the basis that the complaint seeks punitive damages)). Punitive damages awards can be significant in employment cases. *See e.g. Kluczyk v. Tropicana Prods., Inc.*, 847 A.2d 23, 25-26 (N.J. Super. App. Div. 2004) (affirming damages award in full, including $225,000 for punitive damages in discharge case).

(d)    Plaintiff also seeks attorney's fees, which are a "necessary part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action [asserted]." *Goralski*, 2009 U.S. Dist. LEXIS at *16 (citation omitted). Attorneys' fees awards can be significant in employment cases. *See e.g. Kluczyk*, 847 A.2d at 25-26 (affirming damages award in full, including $315,547.45 in counsel fees in discharge case). Here, because LAD provides for the recovery of attorney's fees to the prevailing party, N.J.S.A. § 10:5-27.1, such fees should be calculated as part of the amount in controversy requirement.

(e)    Aggregating these amounts, as is appropriate for evaluating removal based on diversity jurisdiction, the amount in controversy easily exceeds the jurisdictional minimum of $75,000.00. *See Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (aggregating punitive damages and attorney's fees when calculating amount in controversy); *see also Raspa v. Home*

6

*Depot*, 533 F.Supp.2d 514, 522 (D.N.J. 2007) (noting that even on its own, "a request for punitive damages will generally satisfy the amount in controversy requirement[.]").

## VENUE

13.     The United States District Court for the District of New Jersey is the District Court of the United States within which Plaintiff's State Court Action is currently pending.

14.     This Notice of Removal has been filed in the United States District Court for the District of New Jersey, the district court of the United States for the district and division within which the State Court Action is pending, as required by 28 U.S.C. §§ 110, 1441(a) and 1446(a).

15.     Defendant's Notice of Removal was timely as it was made within thirty (30) days of service on Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (time to remove does not begin to run until proper service of the summons and complaint).  Attached as **Exhibit B** is a copy of the Notice of Filing of Notice of Removal to the Clerk of the New Jersey Superior Court, the original of which will be filed with the New Jersey Superior Court Clerk, Law Division, Hudson County as required by 28 U.S.C. § 1446(d)

## NOTICE TO PLAINTIFF

16.     Upon filing of the Notice of Removal, Defendant also gave written notice thereof to Plaintiff's counsel Tyrone Blackburn, Esq., T.A. Blackburn Law, PLLC, pursuant to 28 U.S.C. § 1446(a).

17.     By filing the Notice of Removal, Defendant does not waive any objections to service, jurisdiction, or venue, or any other defenses available to it at law, in equity or otherwise. Defendant intends no admission of fact or law by this Notice and expressly reserve all defenses and motions.

18.     If the Court should be inclined to remand this action, Defendant requests that the Court issue an Order to Show Cause why the case should not be remanded, providing Defendant with an opportunity to present briefing and argument prior to any possible review.

19.     As required by 28 U.S.C. § 1446(a), this Notice of Removal is signed under Rule 11 of the Federal Rules of Civil Procedure

## RELIEF REQUESTED

20.     Defendant requests that the United States District Court for the District of New Jersey assume jurisdiction over the above-captioned action and issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial of this action

**WHEREFORE**, Defendant respectfully requests that this action proceed in this Court as an action properly removed to it.

**LITTLER MENDELSON, P.C.**
Attorneys for Defendant

Dated: April 7, 2022

*/s/ Rachel Seaton Brownell*

Rachel Seaton Brownell
Tomasz Pacholec

4884-4858-0890.1 / 999999-4762

8

# EXHIBIT A

NICK GARGANO,

               Plaintiff,

        v.

ONSOLVE NOW, FORMERLY SEND WORD NOW, JOHN AND JANE DOES 1-10 AND ABC CORPS. 1-10,

               Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: HUDSON COUNTY

DOCKET NO.: HUD-L-000790-22

**Civil Action**

**SUMMONS**

From the State of New Jersey
To the Defendant(s) named above: **OnSolve Now**

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee* payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

     If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

     If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated:   March 7th, 2022

                                     _Michelle M. Smith_
                               Michelle M. Smith, Clerk of the Superior Court

Name of Defendant to be served: **OnSolve Now**
Address of the Defendant to be served: **780 West Granada Blvd Ormond Beach, FL 32174**

**Tyrone Blackburn, ESQ**
**Attorney NJS-ID # 232602020**
**1242 East 80th Street, 3rd Floor**
**Brooklyn, NY 11236**
**(347) 342-7432**
*Attorney for Plaintiff, Nick Gargano*

| | |
|---|---|
| NICK GARGANO,<br><br>      Plaintiff,<br><br>   -against-<br><br>OnSolve Now, formerly Send Word Now,<br>JOHN and JANE DOES 1-10 and<br>ABC CORPS.   1-10<br>      Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br>DOCKET NO. __L-<br><br>Civil Action<br><br>COMPAINT AND JURY DEMAND |

Plaintiff Nick Gargano ("Plaintiff Gargano" or "Mr. Gargano"), by and through his attorney, T.A. Blackburn PLLC, upon their knowledge and belief, and as against OnSolve Now, formerly Send Word Now, John and Jane Doe's 1-10 and ABC Corps. 1-10 asserts as follows:

1. Mr. Gargano brings this action to remedy several egregious acts of disability discrimination and retaliation in violation of the New Jersey Law Against Discrimination.

## PARTIES

1. Plaintiff Mr. Gargano is an adult individual residing at 1312 Yurgel Dr., South Plainfield, NJ 07080.

2. Defendant OnSolve Now, formerly Send Word Now ("Defendant" or "Defendant Corporation"), is a New Jersey-based company with an address at 500 Plaza Drive, Suite 205 Secaucus, NJ 07094. They also have a business address located at 780 West Granada Blvd Ormond Beach, FL 32174.

3. During the relevant time period, Defendants John and Jane Does 1-10 are currently unknown individuals and/or employees who aided and/or abetted in the commission of

conduct complained of herein and/or who either acted within the scope of their employment, Defendants ratified, embraced and added to this conduct. As parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

4. During the relevant time period, Defendants ABC Corps. 1-10 are currently unknown entities who employed Plaintiff or aided and/or abetted in the commission of conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities or individuals by name.

5. At all relevant times, Defendants collectively were Mr. Gargano's "employer" as that term is defined under the NJLAD.

## JURISDICTION AND VENUE

6. The venue is properly set in Hudson County because Defendant had their headquarters in this district when Plaintiff started his employment with Defendant.

7. This Court has personal jurisdiction over Defendants pursuant to and consistent with the Constitutional requirements of Due Process in that Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:

     i. The transaction of any business within the state;

     ii. The making of any contract within the state;

     iii. The commission of a tortious act within this state; and

     iv. The ownership, use, or possession of any real estate situated within this state.

8. Defendant is an active foreign profit corporation registered in New Jersey. Defendant's original filing was in 2013.

9. Upon information and belief, three years after securing their foreign profit corporation status, OnSolve merged with Send Word Now, a New Jersey based company located in this district in Secaucus, New Jersey.

10. Since 2013 to the date of this filing, Defendant has consistently and purposefully availed itself of the privilege of conducting activities within New Jersey, thus invoking the benefits and protections of New Jersey law. In return for these benefits and protections, Defendant must submit to the burdens of litigation in New Jersey.

11. Requiring Defendants to litigate these claims in New Jersey does not offend traditional notions of fair play and substantial justice. Plaintiff Gargano's claims arise from conduct occurring by Defendants in New Jersey.

## NATURE OF ACTION

12. The New Jersey Law Against Discrimination N.J. S.A. 10:5-1, *et seq.*, prohibits employers from denying qualified individuals employment because they have disabilities such as cognitive impairment.

13. Despite these mandated protections, Defendants terminated or deemed ineligible for employment, Mr. Gargano's request for reasonable accommodations regardless of his ability to perform the essential functions of the job.

14. It is submitted that at all times relevant to this Complaint, in violation of New Jersey state laws and regulations, Defendants maintained a policy and practice of discriminating against disabled employees by failing to engage in the interactive process, refusing to provide disabled employees with reasonable accommodations, and by terminating disabled employees who request reasonable accommodations.

15. Plaintiff Gargano now brings this action for retaliation, and disability discrimination pursuant to the New Jersey Law Against Discrimination § 10:5-12 ("NJLAD"), including applicable liquidated damages, interest, attorneys' fees, and costs.

## ADMINISTRATIVE PROCEDURES

16. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC is currently investigating the ADA claims.

17. All conditions precedent to the filing suit have been performed or have occurred.

## FACTUAL ALLEGATIONS

18. Mr. Gargano is a Caucasian male.   Mr. Gargano is a lifelong resident of the state of New Jersey. He is extremely knowledgeable about on-demand emergency and mass notification services and has solely worked in this industry for close to twenty years.

19. Mr. Gargano began his career working as a Senior MSSQL DBA with OnSolve.

20. Through hard work, dedication, and determination, Mr. Gargano mastered his craft and executed the essential functions of his job at a high level for the duration of his employment.

21. Pursuant to OnSolve, the Primary Responsibilities for a Senior Database Administrator:

   a. Solid understanding of MSSQL internal architecture, demonstrated experience with MSSQL database design, implementation, performance tuning, capacity planning, partitions, and Service Broker,
   b. Excellent production environment DBA experience such as HA configuration, backup/log shipping, AlwaysOn Availability Group,
   c. Ability to create and manage on-premises and Azure cloud DB deployments,
   d. Ability to analyze large OLTP database system performance tuning,
   e. Ability to manage large scale, high transactional MSSQL databases,
   f. Proficiency in TSQL programming with strong troubleshooting skills and other programming languages,
   g. Proficient scripting ability and proficiency in command shell and PowerShell scripting,
   h. Experiences with Git, TeamCity, Octopus, and SQL DB project creation and management in Dev Ops,
   i. Ability and willingness to work on-call assignments,
   j. Other duties as assigned.

22. According to Mr. Gargano's work history, he is qualified for Onsolves Senior Database Administrator position.   According to his resume, Mr. Gargano has the following experience:

   a. Monitored system for slow-running objects. Restructured code for 100s of objects whose improvements resulted in processes completing in milliseconds over minutes and seconds over hours in most instances.
   b. Used SQL Sentry to monitor the system for bottlenecks/deadlocking/blocking. Resolved issues by restructuring objects rescheduling SQL Agent Jobs and custom CMD jobs.
   c. Designed and developed a data-sharing environment for customers to be able to share data such as groups and contacts between multiple accounts. Maintained and modified based on client needs. The sales department used this process as a selling point.
   d. Designed and developed an archival/reporting process that would move data from OLTP database into an archival database and then move that data using custom ETL code into a reporting database. This resulted in multiple huge benefits to the company; transactions against the smaller OLTP database, which took minutes completed in subseconds due to the smaller subsets of data and not being affected by reporting since there was a dedicated database for it.
   e. Designed and developed a new Destruction of Data process that would obfuscate PII data found in 1000s of tables. The original process was built using 100s of stored procedures and took hours to complete. My new design used five stored procedures that would access lookup tables and remove sensitive data dynamically.

Statistical information was stored in reporting tables, and upon completion, an email would go out to the customer service department with a complete list of all updates and how many rows were affected—the process was completed in less than an hour.

f. Led a group for testing Always On/Availability Groups.

g. Created a process that would partition our largest databases so the active data stays on one drive and the older data stays on a partition on a separate drive.

h. Created ETL package using command line SQLCMD, MYSQL, and REGEX to move data from SQLServer to a Linux/MYSQL environment which was used as our old reporting environment.

i. Documented flow of data for individual processes/modalities to use an easy reference guide for other developers and administrators. This resulted in fewer coding issues that affected other processes, minimized blocking and deadlocks, and lessened time spent troubleshooting issues.

j. Spent over a week working 20 hour days during/after Hurricane Sandy as the sole DBA available, moving our database environment from servers in Secaucus to Phoenix utilizing customized automated scripts and alerts to be able to focus on more than one task at a time.

k. Assisted Customer Support team on resolving client data issues with backend scripts. Logged resolution and script used in a ticket application. Backed up data prior to making changes to a database used to store this data in case a rollback was needed.

l. Developed scripts for the reporting team for scheduled reports.

m. Deployed database changes via a custom Linux app in QA/UAT/Prod

n. Created custom jobs using SQL Agent, command line SQLCMD, and REGEX for monitoring and alerting.

o. Created and monitored Log Shipping between nodes.

p. Worked with the dev team, creating SQL scripts for them for Remote Database Calls.

q. Created and altered database objects, modifying existing features and creating new features.

r. Tested scripts against large subsets of data between 100s of millions to billions of rows to ensure code ran as efficiently as possible without affecting other processes.

s. Added indexes when necessary.

t. Code reviewed scripts created by other devs to ensure they followed standards and created efficient code.

## MR. GARGANO WAS AN EXCEPTIONAL EMPLOYEE

23. Throughout his time working with the respondent, Mr. Gargano was praised for his work performance.

24. Mr. Gargano never exhibited any performance issues.

25. This is evident from the fact that Mr. Gargano was never written up or reprimanded for his work performance.

## MR. GARGANO ACCOMMODATION REQUEST

26. Throughout his employment, Mr. Gargano has suffered from health challenges.

27. Mr. Gargano has a Neurological Disability, and in the interest of protecting his privacy, we will not name the disability here. Still, we will describe how his disability affected his ability to work.

28. According to Mr. Gargano's September 24, 2021, Accommodation Request Form, Mr. Gargano's Neurologist requested the following:

   a. Higher-level activities involving reading take longer. An increase in MS-related fatigue also reduces efficiency.
   b. Inability to function with mental sharpness in the evening hours with greater compromise in cognition upon waking from sleep—difficulty in the new learning of complex systems.
   c. Mr. Gargano's impairment was classified as permeant.
   d. Calls disturbing sleep places Mr. Gargano at a greater risk for impairment in functioning the following day. No work-related calls after 7 pm.
   e. Providing hands-on training when new learning is required can facilitate the acquisition of new information as self-directed learning has declined.
   f. Allowing one task at a time for additional time to complete tasks.

29. As it pertains to Mr. Gargano's disability and the impact that conducting on-calls has on his disability, Cindy from Human Resources informed Mr. Gargano that he should not be doing on-calls.

30. On April 23, 2021, during a call, Cindy informed Mr. Gargano that "You are not supposed to be doing on calls from what I understand." "Are you still doing on calls?! we can clear that up." "I am going to talk to Jessie real quickly and say hey, there are three things that need to be cleared up immediately: 1. Be respectful, 2. No on-call, and 3. No deployment after hours."

31. This call confirms Mr. Gargano's position that Onsolve understood that he could not do on-calls after 7 pm at night.

32. It also confirms his position that him not doing on-calls after 7 pm does not harm or burden OnSolve.

## MR. GARGANO WAS INSULTED BY MANAGERS FOR BEING DISABLED

33. On March 31, 2021, Mr. Gargano notified Human Resource Business Partner Cindy McEnerney that his manager had made discriminatory comments concerning his disability.

34. In his email to Cindy, Mr. Gargano said the following:

"I have an issue I would like to address with you. I have a disability that has caused me cognitive deficits and has gotten worse over the years. One of my issues is my short-term memory loss. Today I feel I was discriminated because of it. We have a process on how to do things and forgot something that is relatively new (to me at least). After my manager told me that it was discussed over the past few weeks, I apologized and explained my short-term memory loss issues. Instead of being understanding, I was mocked with "What, do I need to tell you every hour?".

This is not the first time I've had an issue with a manager due to my disability, even though it was documented, and I still have to work with those who have made having a disability difficult. I feel more uncomfortable, and I need to know where we go from here."

35. In response, Cindy had a phone conversation with Mr. Gargano. During that call, Cindy pacified the comments made by Mr. Gargano's manager.

36. After the April 23, 2021 assurance from Cindy that he was not required to do on-calls, Mr. Gargano's manager insisted that he do on-calls.

37. Mr. Gargano pleaded with human resources and his manager for several months to accommodate his disability. They refused.

38. Cindy even lied about ever informing Mr. Gargano that he would not be required to do on-calls.

39. Shortly after receiving Mr. Gargano's updated accommodations request, Onsolve terminated Mr. Gargano.

40. The temper of the proximity of Mr. Gargano engaging in the protected activity of requesting reasonable medical accommodations and the date that Onsolve terminated him is so close that it removes all doubt of retaliatory intent.

## COUNT I

### FAILURE TO ACCOMMODATE IN VIOLATION OF N.J.S.A 10:5-1, *et seq.* NEW JERSEY UNLAWFUL EMPLOYMENT PRACTICES OR UNLAWFUL DISCRIMINATION

41. Mr. Gargano repeats and realleges by reference paragraphs 1 through 40 as though fully set forth herein.

42. The NJLAD prohibits an employer from discriminating in the "terms, conditions, or privileges of employment" on the basis of a person's disability, N.J. Stat. Ann. § 10:5-12(a), "unless the handicap precludes the performance of employment," *Failla v. City of Passaic*, 146 F.3d 149, 153 (3d Cir.1998) (citing N.J. Stat. Ann. § 10:5-4.1). To state a

prima facie cause of action for disability discrimination under the NJLAD, the employee must prove (1) he is disabled or perceived to be disabled within the meaning of the NJLAD; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) he was fired; and (4) the employer sought someone else to perform the same work after he left. *Muller v. Exxon Research & Eng'g Co.*, 345 N.J. Super. 595, 786 A.2d 143, 148 (N.J. Super. Ct. App. Div. 2001)) (citing *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 538 A.2d 794, 805 (N.J.1988)). Stowell v. Black Horse Pike Reg'l Sch. Dist., No. 17-06633 (RBK/AMD), 2019 U.S. Dist. LEXIS 198093, at *17-18 (D.N.J. Nov. 15, 2019).

### *Whether Plaintiff had a Disability for Purposes of the NJLAD*

43. The NJLAD's conception of disability "is very broad and does not require that a disability restrict any major life activities to any degree." *Enriquez v. West Jersey Health Sys.*, 342 N.J. Super. 501, 777 A.2d 365 (N.J. Super. Ct. App. Div. 2001); *see* N.J. Stat. Ann. § 10:5-5(q) (defining "disability"); *Viscik v. Fowler Equip.   Co.*, 173 N.J. 1, 800 A.2d 826, 835 (N.J. 2002) ("[NJ]LAD is not restricted to 'severe' or 'immutable' disabilities and has been interpreted as significantly broader than the analogous provisions of the Americans with Disabilities Act."). *Dicino v. Aetna U.S. Healthcare*, Civ. No. 01-3206, 2003 U.S. Dist. LEXIS 26487, 2003 WL 21501818, at *12 (D.N.J. June 23, 2003) (citing *Viscik*, 173 N.J. at 15, 800 A.2d 826).

44. Here, Mr. Gargano is diagnosed with a neurological disability, which is a verified disability under the NJLAD.

45. Plaintiff notified Defendants of his disability throughout his employment. As early as March 2021 to September 2021, Mr. Gargano made several requests for reasonable accommodations.

### *Plaintiff's Qualification to Perform the Essential Functions of His Job*

46. To determine whether this element of a prima facie case is met, "the law applies an objective test when evaluating the 'employers' legitimate expectations' rather than a subjective test." *Guarneri v. Buckeye Pipe Line Servs.   Co.*, 205 F. Supp. 3d 606, 615 (D.N.J. 2016). "Thus, the Court limits its inquiry to objective job qualifications in

evaluating the plaintiff's prima facie case and leaves the determination of whether an employee possesses a subjective quality, such as leadership or management skills, to a later stage." *Id.* Stowell v. Black Horse Pike Reg'l Sch. Dist., No. 17-06633 (RBK/AMD), 2019 U.S. Dist. LEXIS 198093, at *20-21 (D.N.J. Nov. 15, 2019).

47. Here, Mr. Gargano's jobs description when he was hired had the following requirements:

**"Senior MSSQL DBA**:
Busy, entrepreneurial software company is seeking a self-motivated, highly experienced MSSQL Database Administrator to report to the Director of Database Operations and to join a busy team. This is an exciting opportunity for an individual who wants to be part of a dynamic work environment. We are looking for a smart, hard-working, self-motivated individual with a talent for prioritization, an eye for detail, and the ability to be an integral part of our team.

The DBA team is responsible for project management, the development of best practices and repeatable procedures for deploying databases, and day-to-day operational activities including break/fix, space management, backup and recovery, database replication setup and management, and ongoing database change reviews. The team also builds and maintains large-scale and very transactional MSSQL databases.

**Qualifications**:
- Minimum of 5 years of experience with MSSQL 2005/2008,
- Solid understanding of MSSQL internal architecture, demonstrated experience with MSSQL database design, implementation, performance tuning, and capacity planning,
- Excellent production environment DBA experience such as HA configuration, backup/log shipping, replication,
- Ability to create and implement database design solutions in collaboration with the development team,
- Ability to participate in multi-environment deployments and on-call scheduling,
- Ability to analyze large OLTP database system performance tuning,
- Ability to manage large scale, high transactional MSSQL databases,
- Proficiency in TSQL programming with strong troubleshooting skills and other programming languages,
- Good scripting ability and proficiency in command shell and PowerShell scripting,
- Proficiency in database ER design,
- BS/BA – Computer Science or related degree,
- Microsoft MCDBA certificates, Oracle or MySQL background is a plus."

48. Mr. Gargano is a Senior level Database Administrator/Developer with almost 20 years of experience developing and administering SQL Server 7- 2014. Additionally, Mr. Gargano's areas of expertise include database development, performance tuning, T-SQL querying and programming, administration, monitoring, and troubleshooting.

49. Prior to working for defendants, Mr. Gargano worked as a database administrator/network administrator for four years with Queue Associates, Inc.; he worked as a senior database administrator for three years with Shiseido, International; he worked as a senior database developer for a year with Amano Cincinnati; he worked as a senior database administrator for a year with Simon and Schuster/CBS, and he worked as a senior database developer for three years with Online Resources.

50. It is safe to say that Mr. Gargano met and far exceeded the requirements for the role as Senior MSSQL DBA with the defendant corporation.

*Whether Defendant sought someone to perform Plaintiff's job duties*

51. In *Ferren v. Foulke Mgmt. Corp.*, Civ. No. 15-3721, 2017 U.S. Dist. LEXIS 21962, 2017 WL 634511 (D.N.J. February 16, 2017), the Court found that although a plaintiff claiming NJLAD disability discrimination was not replaced with a new employee after being terminated, he had "carried his burden at summary judgment" by showing that a previously existing employee had taken on the Plaintiff's work after his termination. *See also Taha v. TBC Corp.*, Civ. No. 14-3377, 2016 U.S. Dist. LEXIS 55275, 2016 WL 1644330, at *5 (D.N.J. April 26, 2016) (finding that, "[a]s all discrimination claims are highly fact intensive," showing that a defendant hired a new individual as a replacement "is not the only manner in which a plaintiff might demonstrate an inference of discrimination"); *Glenn v. Lawrence Twp. Police Dep't*, Civ. No. 10-3121, 2012 U.S. Dist. LEXIS 37241, 2012 WL 933335, at *5 (D.N.J. March 20, 2012) (stating, "we consider it unwise to require a plaintiff to establish unfailingly as part of the prima facie case that plaintiff was replaced by an individual outside the plaintiff's protected class" (citing *Williams v. Pemberton Twp. Pub. Sch.*, 323 N.J. Super. 490, 733 A.2d 571, 578 (N.J. Super. Ct. App. Div. 1999)). Stowell v. Black Horse Pike Reg'l Sch. Dist., No. 17-06633 (RBK/AMD), 2019 U.S. Dist. LEXIS 198093, at *23 (D.N.J. November 15, 2019).

52. Here, as established in the caselaw, Mr. Gargano's ability to prove that the defendants sought someone to perform his duties is not outcome determinative of the validity of Mr. Gargano's discrimination claims.

53. In light of this, upon information and belief, Mr. Gargano believes that Defendant has replaced him with an individual that is less qualified (in terms of years of experience) than Mr. Gargano, and the individual is not disabled.

54. Mr. Gargano suffered from a disability.

55. Mr. Gargano sought a reasonable accommodation for his disability, including working from home and not being required to conduct on-calls after 7 pm. Upon information and belief, Mr. Gargano's accommodation requests are similar to those offered to Mr. Gargano's peers.

56. As set forth in more detail above, the Defendants were aware of Gargano's disability and his request for work accommodations.

57. Defendants failed to meaningfully engage in the "interactive process" to determine if it could reasonably accommodate Gargano's disability.

58. Defendants failed to grant Mr. Gargano any available reasonable accommodations.

59. The conduct of human resources and Mr. Gargano's supervisor was egregious, willful, wanton, and reckless disregard of Mr. Gargano's rights, for which punitive damages are appropriate.

60. As a result, Mr. Gargano has experienced and will continue to experience a loss of salary and other benefits, emotional distress, stress, depression, and anxiety.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, and seek the following relief:

    a. Compensatory damages for loss of wages (back pay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain suffering, stress, humiliation, and mental anguish;

    b. Punitive damages;

    c. Attorney fees, pre-and post-judgment interest, and cost of suit;

    d. Such other relief as the Court may deem just and appropriate under the circumstances.

## COUNT II

### Retaliation

61. Though fully set forth herein, Mr. Gargano repeats and realleges by reference paragraphs 1 through 60.

62. To establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that: (1) he was in a protected class; (2) he was engaged in a protected activity known to the employer; (3) he was thereafter subjected to an adverse employment consequence; and (4)

there is a causal link between the protected activity and the adverse employment consequence. *Victor v. State of New Jersey*, 203 N.J. 383, 4 A.3d 126, 141 (N.J.2010).

*Mr. Gargano was a member of a protected class*:

63. Mr. Gargano is disabled, and as a result, he is in a protected class pursuant to the NJLAD.

*Mr. Gargano was engaged in a protected activity known to the employer*:

64. On multiple occasions, Mr. Gargano requested reasonable accommodations.

65. The request for reasonable accommodations is a protected activity under the NJLAD.

*Mr. Gargano requested the following accommodations*:

66. According to Mr. Gargano's September 24, 2021, Accommodation Request Form, Mr. Gargano's Neurologist requested the following:

    a.  Higher-level activities involving reading take longer. An increase in MS-related fatigue also reduces efficiency.

    b.  Inability to function with mental sharpness in the evening hours with greater compromise in cognition upon awaking from sleep. Difficulty in the new learning of complex systems.

    c.  Mr. Gargano's impairment was classified as permeant.

    d.  Calls disturbing sleep places Mr. Gargano at a greater risk for impairment in functioning the following day. No work-related calls after 7 pm.

    e.  Providing hands-on training when new learning is required can facilitate the acquisition of new information as self-directed learning has declined.

    f.  Allowing one task at a time for additional time to complete tasks.

67. Defendants failed to engage in the interactive process by refusing to entertain or proposing alternative accommodation to Mr. Gargano's accommodation request.

68. Furthermore, Defendant did not offer Mr. Gargano the ability to work in a different unit or department within the defendants' organization which may have worked with Mr. Gargano's disability and accommodation request.

*As a result of Mr. Gargano's disability accommodation request, defendants subjected him to an adverse employment consequence*:

69. Defendants terminated Mr. Gargano's employment after he made his accommodation request.

_There is a causal link between the protected activity and the adverse employment consequence_:

70. The temper of proximity between Mr. Gargano requesting his accommodation request in September and his date of termination in October is so close that it removes all doubt of discriminatory intent.

71. Mr. Gargano suffered from a disability (Neurological disability).

72. Mr. Gargano sought a reasonable accommodation for his disability, including working from home and not conducting on-calls after 7 pm, similar to the accommodation offered by Defendants to other employees.

73. As set forth in more detail above, the Defendants were aware of Gargano's disability and his request for work accommodations.

74. Defendants failed to meaningfully engage in the "interactive process" to determine if it could reasonably accommodate Gargano's disability.

75. Defendants failed to grant Mr. Gargano any available reasonable accommodations.

76. Defendants terminated Mr. Gargano after refusing his accommodation request.

77. The conduct of human resources and Mr. Gargano's supervisor was egregious, willful, wanton, and reckless disregard of Mr. Gargano's rights, for which punitive damages are appropriate.

78. As a result, Mr. Gargano has experienced and will continue to experience a loss of salary and other benefits, emotional distress, stress, depression, and anxiety.

**WHEREFORE**, Plaintiff Gargano respectfully requests that this Court grant judgment against Defendants and that it order and award him the following relief against Defendants:

1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiffs' rights as secured by the New Jersey Law Against Discrimination _10:5-12 et seq._;

2) Grant Plaintiff's preliminary and permanent injunctions prohibiting Defendants, their agents, successors, employees, and those acting in concert with them and at their direction from engaging in any of the practices set forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of age, gender, internal complaints of discrimination, retaliation, violation of Defendants' policies and applicable statues with respect to their compensation, terms, conditions, and privileges of employment or from continuing or maintaining a policy, practice, custom or usage of

denying, abridging, withholding, conditioning, limiting or otherwise interfering with the rights of Plaintiff Gargano to enjoy equal employment opportunities secured by law;

3) Establish an imposed oversight and monitoring of the activities of Defendants to prevent future acts of retaliation and discrimination;

4) Establish a mechanism for the enforcement of the injunctions by requiring Defendants to present to the Court within thirty (30) days of the issuance of the injunction a plan showing precisely and in detail how it will comply with the Court's order and that it will cease and desist from policies, practices, customs, and usages of discrimination against Plaintiff Gargano and other persons similarly situated;

5) Reimbursement for lost wages, health benefits, social security, experience, training opportunities, and other benefits; in an amount to be proved at trial;

6) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial.

7) Liquidated damages in an amount to be proven at trial;

8) Punitive damages in an amount to be proven at trial;

9) Attorneys' fees, costs, and disbursements;

10) Interest; and

11) Such additional relief to Plaintiff as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, and seek the following relief:

a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain suffering, stress, humiliation, and mental anguish;

b. Punitive damages;

c. Attorney fees, pre-and post-judgment interest, and cost of suit;

d. Such other relief as the Court may deem just and appropriate under the circumstances.

Dated: March 6, 2022

T. A. Blackburn Law PLLC

By: *Tyrone A. Blackburn, Esq.*

Tyrone Blackburn, Esq.

Counsel for Plaintiff Nick Gargano

## JURY DEMAND

Plaintiff Gargano hereby demands a trial by jury on all issues.

T. A. Blackburn Law PLLC

By: *Tyrone A. Blackburn, Esq.*

Tyrone Blackburn, Esq.

Counsel for Plaintiff Nick Gargano

Dated: March 6, 2022

## DESIGNATION OF TRIAL COUNSEL

TYRONE BLACKBURN, ESQ is designated as trial counsel in this matter.

T. A. Blackburn Law PLLC

By: *Tyrone A. Blackburn, Esq.*

Tyrone Blackburn, Esq.

Counsel for Plaintiff Nick Gargano

Dated: March 6, 2022

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment. If so, please attach a copy of each, or alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date: (d) names and addresses of all person insured thereunder; ( e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

T. A. Blackburn Law PLLC

By: *Tyrone A. Blackburn, Esq.*

Tyrone Blackburn, Esq.

Counsel for Plaintiff Nick Gargano

Dated: March 6, 2022

## CERTIFICATION PURSUANT TO R.4:5-1

I certify that the matters in controversy in this action are not subject to any other action pending in any other court or of a pending arbitration proceeding and that no other action or arbitration proceeding is contemplated.

T. A. Blackburn Law PLLC

By: *Tyrone A. Blackburn, Esq.*

Tyrone Blackburn, Esq.

Counsel for Plaintiff Nick Gargano

Dated: March 6, 2022

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-000790-22

**Case Caption:** GARGANO NICK  VS ONSOLVE NOW
**Case Initiation Date:** 03/07/2022
**Attorney Name:** TYRONE ANTHONY BLACKBURN
**Firm Name:** T. A. BLACKBURN LAW, PLLC.
**Address:** 1242 EAST 80TH ST 3RD FL
BROOKLYN NY 11236
**Phone:** 3473427432
**Name of Party:** PLAINTIFF : Gargano, Nick
**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Nick Gargano?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
**If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/07/2022
Dated

/s/ TYRONE ANTHONY BLACKBURN
Signed

# EXHIBIT B

Rachel Seaton Brownell (N.J. Bar No. 021842011)
Tomasz Pacholec (N.J. Bar No. 162142015)
**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
*Attorneys for Defendant*
*OnSolve, LLC*

| | |
|---|---|
| NICK GARGANO,<br><br>                 Plaintiff,<br><br>vs.<br><br>ONSOLVE NOW, formerly SEND WORD NOW, JOHN AND JANE DOES 1-10 and ABC CORPRS. 1-10.<br><br>                 Defendants. | **NEW JERSEY SUPERIOR COURT LAW DIVISION: HUDSON COUNTY**<br>**DOCKET NO: HUD-L-790-22**<br><br>Civil Action<br><br><br>**NOTICE OF FILING OF NOTICE OF REMOVAL** |

**TO:**    Clerk, Civil Division
          Superior Court of New Jersey
          Hudson County
          Brennan Courthouse
          583 Newark Ave
          Jersey City, NJ 07306

**SIR OR MADAM:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant OnSolve, LLC (improperly pled as "OnSolve Now formerly Send Word Now") ("OnSolve" or "Defendant") has filed a Notice of Removal of the above-captioned action in the United States District Court for the District of New Jersey.

Attached hereto as **Exhibit A** is a copy of the Notice of Removal of this case. Upon filing of this Notice of Filing of Notice of Removal, Defendant shall give written notice thereof to Tyrone Blackburn, Esq. T.A. Blackburn Law, PLLC, 1242 East 80th Street, 3rd Floor, Brooklyn New York 11236, attorneys for Plaintiff Nick Gargano.

Pursuant to 28 U.S.C. §1446(d), the filing of the Notice of Removal in the United States District Court for the District of New Jersey, together with the filing of a copy of the Notice of Removal with this Court, effects the removal of this action, and this Court may proceed no further unless and until the action is remanded.

**LITTLER MENDELSON, P.C.**
Attorneys for Defendant
OnSolve, LLC

By: _s/ Rachel Seaton Brownell_
        Rachel Seaton Brownell

Dated:  April 7, 2022

4853-8005-4298.1 / 999999-4762

2